Understood. Thank you, Your Honors. This court illustrates the competing plans that are at issue in this case illustrate how Chapter 11 can be used either for the purpose of giving a viable small business the breathing room that it needs to thrive and to successfully repay all of its creditors or alternatively how it can be used to serve the self-interested motives of opportunists at the expense of a business built through decades of hard work and perseverance. The plan that the debtor proposed in this case would have allowed it to complete the remarkable success that it achieved during the bankruptcy case in significantly paying down its debt. Its plan would have in fact paid all creditors with allowed claims in full very shortly after confirmation of the plan. It was indisputably feasible and it would have maximized the value of the estate and it would have allowed the equity holders in this solvent bankruptcy case to retain the estate's most valuable asset. Can I break in for a second? This is Judge Lafferty. You can certainly spend your time any way you like and I read with interest what you had to say about the importance of the plan to your client your plan but I think and you know we only have a limited amount of time here and to me I'm not so sure what it would mean to stay the denial of confirmation and if in any event the judge had discretion to approve one plan but not the other you know it might be better to spend the time on you know not so much what's wrong with the denial I'm not sure what do you mean to stay that but what was wrong with confirming the other plan but you know it's totally up to you but that's just a suggestion. Thank you your honor and I appreciate the suggestion. So let me start with the court's confirmation of the Cinco plan and let me also first note that I've lost the courtroom clock so I guess I'm just going to do my best to keep time based on the little time in the corner that I have on my screen. Let me ask Millie and Richard to try it because I've lost it too that back up it shows it is working on it right now on the clock thank you all right keep going Mr. Pack because I don't know why there Mellie you'll have to tell us please tell him when he gets at five minutes. I will. So your honor with respect to the court's confirmation of the Cinco plan it erred as a matter of law in confirming that plan in that plan because it was based upon a non-consensual unilateral release of a non-creditor third party borrower of the debtor without any consent of the debtor without any type of arms like negotiation whatsoever and it was proposed by a party that had absolutely no incentive or motivation to maximize the recovery to the bankruptcy estate but in fact had the exact opposite motivation which was to minimize the estate. Can I interrupt for a quick question just make sure I understand where you're going are you are you telling us that as a matter of law the court couldn't have approved that or that she wrongfully balanced some factors that she was supposed to be looking at? Well I think it's both your honor at first as a matter of law the the court relied on section 1123 b3 to say well this is acceptable because the code says that a plan can include a settlement of a claim of the estate but what you had in this case is not a settlement a settlement presumes an actual agreement between the parties to be bound by it and that is not what you have here what you have is Cinco unilaterally dictating the terms of its own release so that is not acceptable under the the bankruptcy code because it's not a settlement the bankruptcy court relied on the ninth circuit's decision in ANC properties to analyze it under that four-factor test but I think what's important here is that the threshold that the ninth circuit laid out in ANC before you even get to the that four factors is that there must be more than a mere good faith negotiation of settlement by the trustee so what that means is that at a baseline in order for something to be an acceptable settlement there must be a negotiation in good faith by some representative of the estate who's actually got a fiduciary duty to maximize the value if you don't have that you don't even get to the four-factor test well let's just let me go ahead miss judge branch i'm gonna say didn't she go through an exhaustive analysis to determine whether or not it satisfied the ANC factors well what she did she did go through the analysis in ANC that looks at those four factors is it fair and reasonable what would be the the difficulties in collection and I will address why I don't think that the court correctly analyzed those those factors however I think what the court did not do is decide is this really a settlement that is permitted by the bankruptcy code what she held is that in rule 9019 it says that only a trustee or a debtor in possession can propose a settlement but the rules have to take a back seat to the code and I think what she was referring to is well 1123b3 says you can propose a settlement in a plan but it says a settlement or adjustment is could this be an adjustment I you know your honor I don't really quite understand what the distinction is between those terms but I've looked them up in in black's dictionary and every other type of dictionary and to me those terms are essentially equivalent except that perhaps adjustment has a specific meaning in the context of an insurance claim which you do not have here okay so I think settlement and adjustment for these purposes are essentially the the same can I argue sorry to interrupt you again but anticipating where I think you're going here the whispering pines case which I think you cite for for you know some support for this argument I mean didn't that case in fact say it wasn't so much that a settlement couldn't be done without the debtor the trustee as much as it was that the court there did no analysis and based apparently gave a deference that might have been appropriate for a trustee or debtor in possession as an estate representative to somebody who was not one so I understand what why you might be you might think that's supportive of your position but doesn't that at least imply that this could be a settlement even if it weren't the trustee and the court's job is to analyze the factors which which did not happen in whispering pines there simply wasn't any analysis of the fairness I mean doesn't that imply that this is doable you know under the first circuit that that's uh opinion in whispering pines I think perhaps there's at least some implication there yeah I thought that that if there was um a an analysis under a more strict level of scrutiny right then perhaps that would be permissible but I also think that's inconsistent with this panel's precedent in Gaius Atkinson because what this panel held in that case is if you want to have a settlement that's proposed by somebody other than a trustee or a debtor in possession you've to meet a a minimum of two requirements number one there has to be a a sufficient reason to allow somebody other than an estate fiduciary to pursue a settlement for example that the debtor doesn't pursue it itself it doesn't have any incentive or motivation to pursue it and two that the sufficient motivation and incentive to maximize the recovery and neither of those things are present in this case here clearly you have a debtor who is very motivated to pursue collection on on this claim during the course of the bankruptcy case and collected on its note by agreeing to the sales of some of these properties and partially releasing its deed of trust so it could get the payments it actually filed an adversary complaint on that promissory note so you have a debtor that is incentivized and willing to pursue its claims so you don't have any sufficient reason to give somebody else a basis to to settle that claim there's a sense though that they're there it's kind of a warped view because yes they're incentivized to litigate this to the death and there's there's definitely a sense that the judge doesn't think your client is going to appropriately litigate your client you know it's going to appropriately litigate that so how does that factor into this this this argument you're making your honor i i respectfully i don't think that you know whether the debtor is going to litigate it to to the death is really a factor in this analysis for a couple of reasons one under our plan the debtor wouldn't really have any ability to expend unlimited amount of money on this litigation we put the controls on on setting litigation budgets and using estate funds in the hands of an independent professionally licensed fiduciary so the debtor wouldn't even have the ability to just spend whatever it wants uh pursuing this claim which would have control over the debtor's principle have control over settlement that the debtor's principle had the ability to oppose a settlement or to not ratify a settlement that was entered into uh by the by the manager if it didn't exceed certain thresholds but the debtor did not have the ability to control how much is being spent on that litigation if there isn't a settlement which forces reasonability in the amount of money that it expends but two i want to address a second factor as well there certainly is no incentive here on the part of cinco to maximize the recovery to the bankruptcy estate it's the one that is going to have to be paying out money to the debtor in order to um get this claim settled its incentive is to pay as little as possible and that's exactly what it did that the settlement payment that cinco is making is the absolute minimum that it would have to pay if it had achieved absolute complete unconditional success on its argument that its unambiguous written agreement to pay interest at prime plus one percent actually means it pays no interest at all that the settlement payment it makes would be assuming that no interest had ever accrued on this loan in the nearly 13 years since it had been extended and that's all it made it also argued that this was really meant to be equity after a certain time right so they could have argued for a discount on that basis couldn't they that that's what they argued but i think that i understand i i know you don't agree yeah you you're at your three minutes do you want to reserve the rest of your time you're actually past it right i i will reserve the rest of my time and then i'll talk about the irreparable injury as well good because you should all right uh mr charles so to avoid background noise i mute i unmute your honor also on the phone with us is chris mcdonough who represents a party who filed a joinder in the opposition to the state pending appeal and mr mcdonough has asked me to reserve a minute for him i will endeavor to do so okay it's your job not ours understood we represent single soldados i'm robert charles louis brooker rothger over christy appreciate the opportunity to have this argument and i guess i want to thank you for having a judicial proceeding on a day like this you know there is insanity in other places and to have courts functioning is is literally something every lawyer on this call would tell you is a blessing with respect to irreparable injury unless you have questions i'm not going to augment our papers and in particular because mr pack hasn't talked about that issue but it seems to me that both judge winry did a better job of explaining our position than i did and our papers explain our position with respect to success in the merits i agree with judge lafferty we're talking about confirmation of the cinco plan and let me simply focus on the the argument that counsel for skyline makes he says and there is no case that says this the the meaning of 11 23 b3 settlement or adjustment in the context of a creditor's plan is no such plan can be approved there's nothing in 11 29 that says that there's nothing in 11 23 you have to rewrite the code somewhere and and obviously that's not your job that's not a power that 105 grants and we've tried to give you some gentle authority for that and i think that if if judge winry were on this call she would have said something almost blurted out in response to one thing mr pack said which is really not directly on point but it's amazing he said to prove cinco's i'm sorry to prove skyline's willingness to collect this debt it filed an adversary well what's entertaining about that statement is it's not true to prove that skyline is serious about file collecting the debt it filed a state court foreclosure action about 30 days after mr zarifi told judge winry he would not foreclose the loan and that's one of the points judge winry makes in her opinion as adding to the litany of reasons why mr zarifi is not any involvement of him any control of him as the sole member of an llc that has a manager tell me how under any state law a manager can act disregarding the directions of the sole member was simply not in the best interest of credit but to go back to the point about settlement it is true that you can read the first circuit BAP opinion and whispering pines and say they think that a settlement offered by a creditor should be treated differently and they say we really don't know how and good luck bankruptcy court figuring it out and and i would say respectfully that's the position that mr pack has put judge winry in this issue comes up in his closing brief there's no suggestion of a standard in the brief or before this panel and there is none in the case law no case has ever looked at whispering pines and said what that means is a settlement proposed by a creditor's plan can never be approved because the creditor is self-interest which they always are and having lived through the great recession i don't mean to cut you off judge lafferty i can see a question so i say just here's my question and i stop but having lived through the great recession every time a secured creditor proposes a liquidating plan which is incredibly familiar we'll take back the property we'll pay the that mr pack would tell you cannot be confirmed as a matter of law because it's not negotiated with the estate and and if that were the law one would think that by now we'd see some authority for that proposition if you go searching though in this area and you look at the at this panel or the ninth circuit on fair and equitable you get a hint of maybe a way to think about this issue in sale cases the the defendant in an adversary or on a claim says hey i've got a great idea let me buy the cause of action for cheap and i'll make it go away and that'll solve the problem and when you look at those cases and you look at BAP opinions you'll see where courts do that without going through the fair and equitable analysis there's a deep concern because you're short cutting process here as judge brand noted judge winery went through the fair and equitable analysis she didn't stop at any of the elements of 1129 or if she incorporated fair and equitable through the requirements of the code but she went through fair and equitable and not in a cursory way but in a detailed comprehensive factual way and to go to judge lafferty's point i wouldn't be will never settle this issue because he cannot it's just not in his nature to ever give up anything but her recitation of the factual background this is not a parole evidence case where a day or a month or a few months after documents are signed someone says aha this document is wrong you're and you lose because the parole evidence statute of frauds or integration clause in the the notes made in july of 2006 january 2007 we need five hundred thousand dollars there's no money anywhere it's a raw land deal it's not even platted yet partners have to put up the money and and judge winery recounts that what happened is chris sheath the principal of cinco the managing member of cinco he's one of the two members mr zarifi is the other his interest is says i'll put up a million six six six six six seven i've talked to the bank that'll buy us at least a year's worth of curtailment payments from the bank and the partners say yes cinco doesn't have a bill from skyline for interest doesn't have a demand from skyline for interest but the note is interest monthly payable so there's been no payments the notes already in default and mr zarifi doesn't say excuse me i object where's my interest and and judge winery's opinion explains why because he's on the bank guarantee for three million six he's agreed among the members he'll pay a quarter of the bank debt 25 and he's even guaranteed the four million dollar debt that's owed to skyla so mr zarifi intentionally decides then and through 2014 give or take when the bank loan has finally paid off sheath i want your money you're not going to we're not going to send you bills about interest we're not going to default the loan when it matures in 2008 we're not going to say anything about that when the six-year arizona statute of limitations comes up in 2014 then we'll do a modification that says there's an issue and and that's not being resolved by extending the maturity date but the course of conduct the course of dealing and the performance suggests there was an oral agreement to modify the interest provision and if there wasn't that skyline is a stop from asserting interest having induced literally mr sheath testifies without controversy i've put up six six point six six point eight million dollars into this deal if sarifi says in december of 2006 hello there's there's interest owed on this note which by the way there's no money to pay so you need to come out of out of your pocket to pay that then she can say well excuse me but my guarantee of the bank debt is less than a million six six cents thanks and good luck joan he could even buy the bank debt for less than he's put into this deal today so so the notion that judge winery probably erred in finding that there were that was a probability of success on litigation over this note is is just nonsense there's a couple of gating question or two for you please i'll shut up i'm not asking you to shut up believe me um you know there's a concern i think that i i think was expressed at some point by mr pack sort of a how did we get here uh you're giving me a wonderful explanation for what judge winery did which was which i agree was impressive and complex but i think the question comes up of there was a claim by your client and in some way i guess this resolves an objection to the claim and i'm not sure how else this was teed up in a bankruptcy sense i'm not suggesting this is exactly you know commercial western finance where you just decide well this is a preference so we'll just put it here but how did this in your mind how did this get teed up is it just we decided to compromise something in a plan confirmation or was it otherwise teed up in a way that would have given mr pack and the other side the chance for the litigator well we've had days of evidentiary hearings so i don't know i understand litigation could have happened after skyline filed its plan and i'm sorry after file this petition and offered a plan the plan was a classic debtor stretch out offer as little as i can cash flow payments for as long a period of time as possible and and cinco said we have a claim we'd like you to terminate exclusivity and let us file a plan judge winery said yes file your plan and the full payment plan that you see from from cinco today is essentially the plan that was filed back then so how we get there from here is skyline has spent the next number of more than a year maybe close to two years trying to incrementally increase their offer to make it look like what mr zarifi was interested in doing is reorganizing a small business in a way that saves an investment and that's of course not at all what you what you understand when you read judge winery's opinion so what we get here because a completing competing plan was filed that said instead of stretching out creditors for a long period of time we'll pay this this amount it's a compromise and we'll pay it now in a way that causes all the creditors to be paid in full right now with money in his pocket i think we get that and then that is a that that is an important feature here i want to go back to something you said you know judge winery said made extensive findings about the probability of success on this claim and for didn't find that there was that there was no chance of of your client losing she found that there was some chance a significant chance your client will win but not a hundred percent chance and then she in effect their argument is well she then gave them a victory a complete absolute victory looking at this can you sort of what's your response to that because yes they they did the interest but there were other factors how would you monetize the value of the overall settlement under the plan so one of the reasons why she doesn't go through to the end is then you just try the case and so that's why i think you have to get an estimate but as to the argument that get that cinco gets everything it could have possibly gotten that is not true the note has never been paid on any basis other than through lot sales and and if you look at any reasonable trajectory trajectory for selling lots that's going to take years so instead of cash up front today you you get time value of money concerns the second the second thing that you give up or is that just an abstract concept that was in the background there if there is no factual determination by the court but it is also true that if you look at the history of payment evidence provided to the judge it is clear there were no payments on the note until after the bank loan was paid and there were funds available from lots there never have been so so to say as as skyline certainly does the thing is all due now to us is contradicted by the course of dealing second cinco has been incurring legal fees in this fight for years and they are not insignificant we've asked for a fraction of them to be reimbursed under a substantial contribution period those are way so in our view those are at least two materially better outcomes for the estate than and and the third obviously is from judge labrador's question this should have been converted to equity and and we think we have a good argument there uh chief might individually have a restitution claim but but those things go away we pay right now in full the balance so creditors can be paid in full is the cost of the litigation on behalf of the debtor that is okay it's settled the debtor no longer has to has to expend funds is that also a benefit that should be calculated certainly that was judge winery's view but your question was what about the not incurring not incurring right not deferring you're right not encouraging and not recovering prior or investing okay in honor of my commitment to mr mcdonough i'd ask if you have any other questions and if not i'd see him the balance of the time all right it's judge lafferty judge brand thank you all right uh good afternoon your honors uh just very briefly um chris mcdonough represent pino's properties loc uh which is the largest secure creditor in bankruptcy um i believe all creditors are in the same position as my client that they do not want any further delay uh further delay would damage them cause further damage it's already been almost three years that this case has been pending and we don't know through the course of the appeal how much longer that would last and so uh the panel's being asked to grant an extraordinary remedy with the state uh that's a matter of equity we believe will be inequitable to impose further harm on the creditors all right thank you thank you all right mr pack you have something slightly under three minutes left in your allotted time i'll try and use it wisely your honor before i address irreparable harm i want to address just two things that mr charles said uh first he said well you know if you take mr pack's argument you'll never be able to have a secured creditor's plan where they you know give up some value in exchange for being able to liquidate the debtor's property cinco is not a creditor so this is not comparable at all uh cinco is a borrower of the debtor and they're not what they're doing is simply unilaterally releasing themselves of liability they're not releasing the estate from liability for a secured claim so that is not a comparable analogy two you know with respect to our plan the debtor's plan is not a well we'll wait for as long as possible to pay claims it is a full payment plan pay all creditors in full with interest and now as of the time of confirmation there's sufficient funds in the estate to pay everybody very very quickly if not immediately on confirmation then very shortly thereafter and the manager has a duty under the plan to pay everybody as promptly as there is money available to pay them uh with respect to irreparable injury what we have now is a senior deed of trust on property that secures a debt that's somewhere between uh five to eight million dollars well can the court's finding well the court found the value the court found that the value of the property five million i don't think that caps us because we're you know this isn't like uh we're valuing debtor's secured claim well but it's a practical matter it's sort of sort of risky to say it's worth eight because what would you collect i understood although i note that uh cinco valued the property at six million dollars uh for their appraisal that enabled them to obtain this this bank loan but if their plan gets confirmed we lose our senior deed of trust at the we cannot ever get that back well can i can i ask you can i ask you a question that's bugging me are you are you telling us as a matter of law that's irreparable harm no matter what you get in return it's just it is just end of story once you lose a lien that's it or should we be balanced should should the court have been balancing something or what how should we look at that i think in a large sense your honor it is as a matter of law irreparable harm because a a first priority lien is a constitutionally protected property interest but as a practical matter this certainly gives rise to a significant probability of irreparable harm because at best we're going to be subrogated to a a bank lien whose terms have never been disclosed to us so we have no idea what the terms are uh if there's a default on that they're going to be able to foreclose and wipe us out completely and we'll get nothing and as mr charles said the only way that debtor has ever been paid on its note is through lot sales so if we are no longer in a first position uh priority and there's another bank with a lien on this property they are going to dictate on what terms uh lots are going to be released and whether any payment if anything at all is going to be paid to uh to skyline when lots are sold so isn't it relevant that the how the loan proceeds were used though isn't there benefit i mean that that's that's i'm having a problem here because there's it almost seems as though the argument is this big loan went in there and there was no benefit to us from that big loan and i i don't think that's true because it paid creditors correct of the debtor well there may be some i i understand your honor that there's going to be some benefit in that that money will be used to fund payments to uh to creditors that will relieve us of that responsibility um but there are payments to creditors that are being made that on claims that we haven't agreed to there are going to be other costs of this loan including origination fees and other things that we don't even know about and that aside no matter what we are losing the full value of uh of this loan so even if we may not be able to recover the additional amount of money that we're owed in excess of that 2.7 million dollars that cinco is going to pay under our plan and if we lose that first position lien that's never going to be recovered so while there may be some benefit while we may be able while we may be able to far less than the full amount uh that we are owed and there is argue you wrote that that we argue that we're owed that at least we should have the ability to litigate that claim to uh cost you to litigate cost you to incur litigation cost i mean that's my point is you're acting like these are really cast in stone simple equations and i just see it's really a much more complicated um numerical analysis i think you know your honor i agree that there's no question it would cost some money to to litigate this um i estimated it would cost somewhere around 60 000 to litigate the bankruptcy court kind of dismissed that as well as that's just speculative and that's based on my personal knowledge of this case that i've spent you know the last two years working on in my knowledge as a litigator maybe am i underestimating it you know i don't think so i think this could be done for for that much um but you know i think in relation to the amount of money that is owed on that debt the litigation costs are not so substantial that we're receiving a a proportional benefit in just receiving this payment without having to expend that money but you also are you know you're not accruing interest on any of the other debt that's being paid off i mean there's just so many factors um i don't know i i would say even the jmpcc case which talks about in fairly broad language about losing a first position lien is very clear that you know the analysis is a balance of the two factors you know the irreparable harm is measured against the likelihood of success so it's not i mean as judge taylor said nothing is cast in stone we have to think about these things in a sort of more flexible way so again what's your thinking about that uh i respectfully i think that we do have a likelihood of success so um it's not okay it is not just irreparable harm i mean irreparable harm i think is very significant in the context of this particular motion um are you really telling us that that we should stay this because we should find after all that analysis that her 50 50 um risk weighting factor is is so obviously wrong that it stays appropriate i think it stays appropriate because there is a very significant risk of irreparable harm and because we have a strong likelihood of success on on the merits i think it's both um i want to address your comments judge taylor about the fact that we're saving interest here if the court were to confirm the debtor's plan we could be saving interest on all these secured on all of these secured claims because we could pay them in full immediately so we would be saving interest on that we would be paying less money under our plan to to creditors um so there's no savings to us well if you get an agreement with them or if you get i get it but i'm just saying and doing the math it's not i just don't think this is i think you're being too simplistic i'll be honest your honor respectfully we had an agreement with mr mcdonough's client that we would pay them 600 000 inclusive of attorney's fees the sinko's plan is you'll pay them 600 000 plus all of their attorney's fees so there is a cost savings there and we could pay that immediately they're paying 200 000 to a creditor who's filed a claim that has never been proven valid that they had previously taken to the registrar of contractors and had rejected which is based on hey we've got construction defects on this home but it's a home that skyline never built so they're suing us for construction defects for another builder that's 200 000 that's going out the door to them without any real analysis of of their claim uh your honor i think i've gone well above uh the amount of time so that that accrues to your benefit because i have no idea so but i'm almost certain that you're right so with that i want to thank all of uh the three council for appearing here today as i said this this is an interesting case it's an interesting plan both the plans are interesting the situation is interesting the judge has done a tremendous amount of work on this and we felt that our decision would be well would be um i wouldn't say made easier but that the decisional process would be improved by giving you this opportunity to argue here today and i will just say i agree with with mr charles it's not a great day in many ways in the march of democracy but this is the kind of of civil proceeding where we meet as citizens of this country in good faith and we have differences of opinion we have some tough questions and i appreciate all the attorneys answering them with style thank you very much thank you your submission and we will get back to you as soon as possible thank you sure thank you all right thank you this session of the ninth circuit bankruptcy appellate panel is now adjourned
judges: Taylor, Lafferty, Brand